Code:        446
Name:        Shannon Hammond
Address:     2331 Melody Lane
             Reno, NV 89512
Telephone:   (775) 233-5238
Email:       SLH9001@yahoo.com
Self-Represented Litigant

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

PLANTIFF,

Shannon Lee Hammond, pro se

vs.

DEFENDANTS,

Washoe County School District

Case No.:

Dept:        3:26-cv-00221

**COMPLAINT**
**DEMAND FOR JURY TRIAL**

### JURISDICTION

1. My case belongs in federal court

☑ under federal question jurisdiction because it involves a federal law or right.

Title VII of the Civil Rights Act of 1964, as amended, 42 United States Code ("U.S.C.") Section 2000e, and the following ("et seq."),

☐ under diversity jurisdiction because none of the plaintiffs live in the same state as any of the defendants and the amount of damages is more than $75,000.

### VENUE

2. Venue is appropriate in this Court because:

☑ a substantial part of the events I am suing about happened in this district.

☐ a substantial part of the property I am suing about is located in this district.

COMPLAINT  DEMAND FOR JURY TRIAL - 1

☐ I am suing the U.S. government, federal agency, or federal official in his or her official capacity and I live in this district.

☐ at least one defendant is located in this District and any other defendants are located in California.

## INTRADISTRICT ASSIGNMENT

3. Because this lawsuit arose in Washoe County, it should be assigned to the Northern Division of this Court.

## PARTIES

1. Plaintiff.

   Name: Shannon Lee Hammond

   Address: 2331 Melody Lane, Reno, NV  89512

   Telephone: (775) 233-5238

2. Defendant.

   Name: Washoe County School District

   Address: 425 E. Ninth Street, Reno, Nevada 89512

   Telephone: (775) 331-5150

## STATEMENT OF FACTS

6. Plaintiff Shannon Lee Hammond ("Plaintiff") was hired by Defendant Washoe County School District ("WCSD") on October 3, 2023, as an Administrative Secretary

COMPLAINT  DEMAND FOR JURY TRIAL - 2

in the Facilities Maintenance Department, under the direct supervision of Department Director Charlie Hoppe.

7. From the outset of her employment, Plaintiff was subjected to disparate and inferior treatment based on her sex. On December 10, 2023, Mr. Hoppe denied Plaintiff's request for a polo shirt with the "Maintenance" department logo, which was afforded to other department members, and instead instructed her to obtain a shirt from the "Housekeeping" department, thereby diminishing her role and status.

8. Mr. Hoppe subjected Plaintiff to a pervasive pattern of monitoring and micromanagement not applied to her male colleagues. On May 21, 2024, he began demanding Plaintiff document all her projects on a whiteboard to justify her work performance, a requirement not imposed on any other employee.

9. On May 24, 2024, after Plaintiff suggested an informal meeting among secretaries to improve communication, Mr. Hoppe intervened, demanding a formal agenda and meeting minutes be submitted to him, thereby controlling and undermining a peer-led initiative.

10. On July 8, 2024, Mr. Hoppe singled out and admonished Plaintiff for wearing a baseball hat in the office, making it a subject of formal discipline. In contrast, multiple male maintenance technicians were permitted to wear baseball hats indoors without any correction.

11. Throughout her employment, Plaintiff engaged in protected activities, including reporting what she reasonably believed to be financial irregularities and misuse of public funds, which led to her pursuing a Qui Tam lawsuit. Plaintiff also engaged in protected

COMPLAINT DEMAND FOR JURY TRIAL - 3

activity by opposing and complaining about the discriminatory and retaliatory treatment she endured.

12. Mr. Hoppe engaged in behavior that constituted monitoring outside of work hours. Beginning around November 3, 2024, he would wait in his vehicle after hours to watch Plaintiff leave the parking lot, creating an atmosphere of being stalked.

13. On January 21, 2025, Mr. Hoppe confronted and accused Plaintiff of taking an "early break" for preparing breakfast in the breakroom, an activity other employees engaged in without repercussion.

14. On February 12, 2025, after Plaintiff identified and closed old purchase orders, saving the department approximately $181,000, Mr. Hoppe demanded she remove her name from a summary document she created. When Plaintiff refused, stating he was trying to take credit for her work, Mr. Hoppe accused her of insubordination in retaliation.

15. On February 18, 2025, upon seeing Plaintiff preparing a form to request a job reclassification based on her performing duties exceeding her job description, Mr. Hoppe preemptively discouraged her, stating, "you shouldn't do that until you know for sure that you will be reclassed," signaling his intent to deny the request. Subsequently, Mr. Hoppe's supervisor, Tami Zimmerman, also denied the request, preventing it from ever being studied by Human Resources as required by WCSD process.

16. WCSD, through Mr. Hoppe, applied leave and attendance policies in a disparate manner. Male colleagues were accommodated for unapproved absences and leave deficits, while Plaintiff's legitimate leave requests were met with unwarranted scrutiny and denial, such as forcing her to take Leave Without Pay for an absence on August 21, 2025,

COMPLAINT DEMAND FOR JURY TRIAL - 4

while a male colleague faced no consequences for going to a casino during work hours the previous day.

17. In response to Plaintiff's complaints about unfair treatment, WCSD and Mr. Hoppe engaged in a systematic campaign of retaliation. Beginning in March 2025, immediately after Plaintiff filed a formal internal complaint of discrimination, Mr. Hoppe initiated approximately eight separate Investigatory Disciplinary Process (IDP) notices against her for minor and pretextual infractions. No other employee supervised by Mr. Hoppe received any IDPs during this period.

18. In a further attempt to seek redress for the unlawful treatment, Plaintiff engaged in additional protected activity by filing a formal complaint with the Government Employee's Review Board on or about April 21, 2025.

19. On May 15, 2025, further evidence of disparate treatment emerged. Prior to her reclassification request, Plaintiff had created and maintained a Gantt Chart to track department contracts, a task exceeding her job specifications. After a male colleague, Jake Zander, was promoted to a new 'Contracts/Inspector' position created for this purpose, Plaintiff ceased maintaining the chart. When Mr. Hoppe questioned Plaintiff about contract tracking, she referred him to Mr. Zander. Mr. Hoppe dismissed this, stating, 'that isn't really what Jake does,' revealing that the male colleague was being paid for the promoted position while still primarily working his old job as a plumber, and the responsibilities for which he was promoted were not being enforced. This demonstrated that a male employee was favored with a promotion without being held accountable for the associated duties, while Plaintiff was simultaneously denied a reclassification for performing work beyond her own job description.

COMPLAINT DEMAND FOR JURY TRIAL - 5

20. Defendant, through Mr. Hoppe, also systematically denied Plaintiff opportunities for professional development that were essential for career advancement. Plaintiff requested to attend a training class to learn Microsoft Access, a skill that would increase her value and potential for promotion within WCSD. Mr. Hoppe denied this request without a legitimate business reason. This denial stands in stark contrast to the promotion of a male colleague into a role he was not required to perform, demonstrating a clear pattern of limiting Plaintiff's advancement while favoring male employees.

21. In response to the ongoing unlawful treatment, Plaintiff filed two formal grievances. The filing of these grievances constitutes further protected activity.

22. The cumulative effect of the gender-based disparate treatment, constant surveillance, public admonishments, denial of professional opportunities, and the relentless campaign of baseless retaliatory discipline altered the conditions of Plaintiff's employment and created an abusive, intimidating, and hostile work environment.

23. The final and intolerable condition occurred as a result of the 4th level grievance hearing. The finding from this hearing concluded that Plaintiff's manager, Mr. Hoppe, was permitted to accuse her of misconduct that may not be true, find her guilty of his own allegations, and impose discipline without substantiated proof.

24. This outcome demonstrated that WCSD's internal due process system was fundamentally broken and incapable of providing a fair resolution, rendering Plaintiff's working conditions so intolerable that a reasonable person in her position would have felt compelled to resign.

25. As a direct result, Plaintiff submitted her resignation, explicitly identifying the reason for her departure as "constructive discharge."

COMPLAINT DEMAND FOR JURY TRIAL - 6

26. The constant stress, anxiety, and depression resulting from Defendant's conduct have had a severe and debilitating effect on Plaintiff's emotional and psychological well-being. She has lost the confidence to maintain a social life and now isolates herself at home. This stark change in her behavior has been observed by her family and friends. Plaintiff has lost all interest in extracurricular activities she previously enjoyed. The anxiety and depression became so severe that she was compelled to resign without having secured other employment, risking her financial stability and lifestyle to escape the toxic work environment created by WCSD.

27. The loss of income and severe emotional distress directly caused by Defendant's actions resulted in significant and foreseeable financial damages to the Plaintiff. Unable to pay her bills, Plaintiff incurred approximately $1,227 in bank overdraft fees in 2025. Her inability to maintain her auto insurance resulted in three separate DMV fees totaling $1,500 and now forces her to carry a costly SR-22 rider on her insurance policy for the next three years.

28. Plaintiff has exhausted her administrative remedies by timely filing a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and has received a Notice of Right to Sue, a copy of which is attached as Exhibit A. This action is filed within 90 days of receipt of that notice.

**CLAIMS**

**First Claim**

(Gender Discrimination in Violation of Title VII)

(Against Defendant Washoe County School District)

COMPLAINT  DEMAND FOR JURY TRIAL - 7

29. Rule: Plaintiff realleges and incorporates by reference the preceding paragraphs. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), makes it an unlawful employment practice for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's...sex."

30. Analysis/Argument: Defendant WCSD, through its supervisor, subjected Plaintiff to adverse employment actions and disparate treatment because of her sex. This discriminatory animus is evidenced by Mr. Hoppe's actions, including but not limited to: (a) denying Plaintiff departmental attire afforded to others, thereby diminishing her status; (b) enforcing a dress code against Plaintiff while permitting male colleagues to violate the same policy without consequence; (c) applying leave and attendance policies with unwarranted scrutiny and punitive results toward Plaintiff while granting flexibility and accommodation to male employees; and (d) denying Plaintiff a reclassification request while creating a work environment where her contributions were minimized. These actions materially and negatively altered the terms and conditions of Plaintiff's employment compared to similarly situated male employees.

31. Conclusion: Defendant's conduct constitutes gender discrimination in violation of Title VII. As a direct and proximate result of this unlawful discrimination, Plaintiff has suffered and continues to suffer damages, including but not limited to lost wages and benefits, emotional distress, and other pecuniary losses.

**Second Claim**

(Retaliation in Violation of Title VII)

COMPLAINT  DEMAND FOR JURY TRIAL - 8

(Against Defendant Washoe County School District)

32. Rule: Plaintiff realleges and incorporates by reference the preceding paragraphs. Title VII's anti-retaliation provision, 42 U.S.C. § 2000e-3(a), prohibits an employer from discriminating against an employee because she has opposed an unlawful employment practice. To be actionable, an employer's conduct must be "materially adverse," meaning it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

33. Analysis/Argument: Plaintiff engaged in multiple statutorily protected activities by opposing what she reasonably believed to be unlawful discrimination. These activities included, but were not limited to, complaining internally about disparate treatment, filing formal grievances, filing a complaint with the Government Employee's Review Board, and reporting financial misconduct. Following these protected activities, Defendant, through Mr. Hoppe, subjected Plaintiff to a pattern of antagonism and materially adverse actions. This retaliatory campaign included: (a) accusing Plaintiff of insubordination for taking credit for her own significant work product; (b) initiating an unprecedented series of approximately eight baseless disciplinary actions (IDPs) against her in close temporal proximity to her complaints, while no other employee was so disciplined; and (c) denying her overtime and professional opportunities. This systematic campaign of discipline and scrutiny was not a series of trivial or isolated incidents but constituted a coordinated effort that would dissuade a reasonable employee from opposing discrimination.

34. Conclusion: Defendant's actions constitute unlawful retaliation in violation of Title VII. As a direct and proximate result of this retaliation, Plaintiff was subjected to a

COMPLAINT DEMAND FOR JURY TRIAL - 9

punitive work environment, suffered damage to her professional reputation, and incurred financial losses and severe emotional distress.

**Third Claim**

(Hostile Work Environment in Violation of Title VII)

(Against Defendant Washoe County School District)

35. Rule: Plaintiff realleges and incorporates by reference the preceding paragraphs. An employer violates Title VII when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). The conduct must be both objectively and subjectively offensive.

36. Analysis/Argument: Defendant subjected Plaintiff to a hostile work environment based on her gender and in retaliation for her protected activities. The conduct was severe and pervasive, as evidenced by the cumulative effect of: (a) constant, unique, and targeted micromanagement and surveillance not imposed on male colleagues; (b) intimidating behavior such as monitoring Plaintiff after work hours; (c) the continuous disparate application of workplace rules, which served to isolate and humiliate her; and (d) the relentless campaign of pretextual disciplinary actions. This pattern of conduct went beyond ordinary workplace tribulations and created an environment that was, from both a reasonable person's perspective and Plaintiff's subjective experience, hostile, abusive, and intimidating.

37. Conclusion: Defendant's failure to prevent or correct this conduct created a hostile work environment in violation of Title VII. As a direct and proximate result, Plaintiff

COMPLAINT  DEMAND FOR JURY TRIAL - 10

suffered severe and ongoing emotional distress and was forced to work in an abusive atmosphere that fundamentally altered the conditions of her employment.

**Fourth Claim**

(Constructive Discharge)

(Against Defendant Washoe County School District)

38. Rule: Plaintiff realleges and incorporates by reference the preceding paragraphs. An employer is liable for a constructive discharge when "the abusive working environment became so intolerable that her resignation qualified as a fitting response." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 134 (2004). The inquiry is objective: whether working conditions became so difficult or unpleasant that a reasonable person in the employee's position would have felt compelled to resign.

39. Analysis/Argument: The severe and pervasive hostile work environment, relentless campaign of retaliation, and systemic discrimination created by Defendant resulted in intolerable working conditions. The final act that made a reasonable person feel compelled to resign was the finding of the 4th level grievance hearing. This finding affirmed that Plaintiff's supervisor could baselessly accuse her of misconduct, find her guilty of his own allegations, and impose discipline without substantiated proof. This outcome destroyed any possibility of fair treatment or due process within the organization and confirmed that the hostile conditions were not only tolerated but officially sanctioned by Defendant.

40. Conclusion: A reasonable person in Plaintiff's position would have found the conditions so intolerable as to be forced to resign. Therefore, Plaintiff's resignation was a constructive discharge, which constitutes a tangible adverse employment action. As a direct

COMPLAINT DEMAND FOR JURY TRIAL - 11

and proximate result, Plaintiff suffered damages including the loss of her job, future earnings, benefits, and severe emotional distress.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A. For general and compensatory damages for severe emotional distress, anxiety, depression, loss of enjoyment of life, and damage to personal and professional reputation, in an amount to be determined at trial;

B. For lost wages, earnings, and other employment benefits, both past and future;

C. For special damages, including but not limited to, bank overdraft fees and costs associated with department of motor vehicle fines and increased insurance premiums, in an amount to be proven at trial;

D. For any other equitable relief the Court deems just and proper, including reinstatement or front pay; and

E. For such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

☑ Plaintiff demands a jury trial on all issues so triable.

Date: March 27, 2026

COMPLAINT  DEMAND FOR JURY TRIAL - 12

Respectfully submitted,

Shannon Lee Hammond

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

COMPLAINT  DEMAND FOR JURY TRIAL - 13

## INDEX OF EXHIBITS

Exhibit Number 1                    Number of Pages 1

Exhibit Description Equal Employment Opportunity Letter dated 12/17/25

Exhibit Number 2                    Number of Pages 2

Exhibit Description Email from EEOC dated 12/26/25

Exhibit Number _____           Number of Pages _____

Exhibit Description _____

Exhibit Number _____           Number of Pages _____

Exhibit Description _____

Exhibit Number _____           Number of Pages _____

Exhibit Description _____

Exhibit Number _____           Number of Pages _____

Exhibit Description _____

Exhibit Number _____           Number of Pages _____

Exhibit Description _____

Exhibit Number _____           Number of Pages _____

Exhibit Description _____

Exhibit Number _____           Number of Pages _____

Exhibit Description _____

# Exhibit Cover Page

**EXHIBIT NUMBER ___1___**



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

**Civil Rights Department**

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
www.calcivilrights.ca.gov | contact.center@dfeh.ca.gov

EEOC Number:    550-2026-00017

Case Name:      Miss Shannon L. Hammond v. Washoe County School District

Filing Date:    December 17, 2025

## NOTICE TO COMPLAINANT AND RESPONDENT

This is to advise you that the above-referenced complaint is being dual filed with the California Civil Rights Department (CRD) by the U.S. Equal Employment Opportunity Commission (EEOC). The complaint will be filed in accordance with California Government Code section 12960. This notice constitutes service pursuant to Government Code section 12962.

The EEOC is responsible for the processing of this complaint. Please contact EEOC directly for any discussion of this complaint or the investigation.

## NOTICE TO COMPLAINANT OF RIGHT TO SUE

This letter is also your Right to Sue notice. **This Right to Sue Notice allows you to file a private lawsuit in State court**. According to Government Code section 12965, subdivision (c), you may bring a civil action under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The lawsuit may be filed in a State of California Superior Court. Government Code section 12965, subdivision (c), provides that such a civil action must be brought within one year from the date of this notice. Pursuant to Government Code section 12965, subdivision (e)(1), this one-year period will be tolled during the pendency of the EEOC's investigation of your complaint. You should consult an attorney to determine with accuracy the date by which a civil action must be filed. This right to file a civil action may be waived in the event a settlement agreement is signed.

Be advised, CRD does not retain case records beyond three years after a complaint is filed.

CRD-200-02 (09/2022)

# Exhibit Cover Page

EXHIBIT NUMBER ___2___

Reminder: Time-Sensitive EEOC Final Decision for EEOC Charge 550-2026-00017 / Decisión final urgente de la EEOC por el cargo 550-2026-00017

From: EEOC (no-reply@service.eeoc.gov)

To: slh9001@yahoo.com

Date: Friday, December 26, 2025 at 08:26 PM PST

 **U.S. Equal Employment Opportunity Commission**

The Equal Employment Opportunity Commission (EEOC) has issued a final decision regarding EEOC Charge 550-2026-00017, which can be found in the document titled **DETERMINATION AND NOTICE OF RIGHTS** in the EEOC Public Portal. This email, as well as the DETERMINATION AND NOTICE OF RIGHTS, is official notice that the EEOC has dismissed the above-referenced EEOC charge and that the Charging Party has the right to sue the respondent(s) on this charge in court within 90 days of receipt of this notice. The DETERMINATION AND NOTICE OF RIGHTS also provides additional information related to filing suit under the laws enforced by the EEOC, including important time limits. Please note that the 90-day deadline for Charging Party to file a lawsuit is set by law and failure to file a lawsuit in that time may result in the inability to move forward with a lawsuit.

**You should log into the EEOC Public Portal, download and read the DETERMINATION AND NOTICE OF RIGHTS as soon as possible. You should also keep a record of the date you received this notice and save the downloaded DETERMINATION AND NOTICE OF RIGHTS.**

This email is an official notification from the Equal Employment Opportunity Commission (EEOC) regarding charge 550-2026-00017. Please do not reply to this email.

*Notice of Confidentiality: This email may contain privileged and confidential information, including information protected by federal and state privacy laws. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution, or duplication of this communication is strictly prohibited and may be unlawful. If you are not the intended recipient, please contact (800) 669-4000 and destroy all copies of the original message and attachments.*

La Comisión para la Igualdad de Oportunidades de Empleo (EEOC, por sus siglas en inglés), ha emitido una decisión final con respecto al cargo de dicha Comisión 550-2026-00017, que se encuentra en el documento titulado **Determinación y Notificación de Derechos** en el Portal Público de la EEOC. Este correo electrónico, así como la Determinación y Notificación de Derechos, es un aviso oficial que indica que la EEOC ha desestimado el cargo mencionado anteriormente y que la parte acusadora tiene derecho a demandar a los responsables de este cargo en un tribunal en los 90 días posteriores a la recepción de este aviso. La Determinación y Notificación de Derechos también proporciona información adicional relacionada con la presentación de la demanda bajo las leyes aplicadas por la EEOC, incluyendo límites de tiempo importantes. Por favor, tenga en cuenta que la fecha límite de 90 días para que la parte demandante presente la demanda está determinada por ley y que, en caso de no presentarla en ese plazo, podría dar como resultado la incapacidad de seguir adelante con esta.

**Debe registrarse en el Portal Público de la EEOC, descargar y leer la Determinación y Notificación de Derechos lo antes posible. Además, debería tomar nota de la fecha en la que recibió este aviso y guardar la Determinación y Notificación de Derechos descargada.**

Este correo electrónico es una notificación oficial de la EEOC relacionado con el cargo 550-2026-00017. Por favor, no responda a este correo electrónico.

*Aviso de confidencialidad: La información contenida en este correo electrónico puede contener información privilegiada y confidencial, incluida información protegida por las leyes de privacidad federales y estatales. Está destinada únicamente al uso de la(s) persona(s) nombrada(s) anteriormente. Si usted no es el(la) destinatario(a) previsto(a), se le notifica que cualquier revisión, difusión, distribución o duplicación de esta comunicación está estrictamente prohibida y puede ser ilegal. Si usted no es el(la) destinatario(a) previsto(a), póngase en contacto con el (800) 669-4000 y destruya todas las copias del mensaje original y los archivos adjuntos.*